**Robert RUDE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 92–87.**

Supreme Court of Wyoming.

April 26, 1993.

Joseph B. Meyer, Atty. Gen.; Sylvia L. Hackl, Deputy Atty. Gen.; and Barbara L. Boyer, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

Appellant, Robert Merril Rude, appeals the district court's denial of his motion to withdraw his nolo contendere plea to conspiracy to commit second-degree murder. We agree with the findings of the district court and affirm.

Appellant raises a single issue:

Was Robert Rude's plea of nolo contendere to conspiracy to commit second degree murder, entered voluntarily?

## I. FACTS

On April 19, 1991, a criminal complaint was filed alleging that appellant conspired with his father, Jack Stanley Rude, to kill appellant's former wife, Mary Elizabeth Rude. Appellant was arraigned on August 9, 1991 on a charge of conspiracy to commit first-degree murder and the district court judge entered a plea of not guilty in his behalf.

On March 6, 1992, appellant appeared in district court for re-arraignment and, pursuant to a written "Stipulation and Agreement," entered a plea of nolo contendere to the charge of conspiracy to commit second-degree murder. A factual basis was provided by the prosecutor.

Appellant was sentenced to a term of not less than twenty years nor more than thirty-five years in the Wyoming State Penitentiary. The written judgment and sentence was filed on March 11, 1992.

On March 20, 1992, appellant filed a motion to withdraw his plea of nolo contendere contending the plea had been coerced and, by inference, ineffective assistance of counsel. Following the filing of the motion to withdraw the plea, appellant's trial attorneys were permitted to withdraw from further representation of appellant and new counsel was appointed to represent him.

Leonard D. Munker, State Public Defender; Deborah Cornia, Appellate Counsel; and Tim Newcomb, Appellate Counsel, for appellant.

An evidentiary hearing on appellant's motion was conducted on April 9 and 10, 1992. At that hearing, the district court considered the testimony of all three of appellant's attorneys. The defense attorneys, obviously wise in the predilections of criminal defendants, taped their discussions with appellant leading up to the plea agreement. The defense attorneys were adamant that:

1. There were no conversations or agreements with the prosecutor that the State would not accept a plea from Jack Stanley Rude unless appellant agreed to plead first or simultaneously.

2. In fact, as far as appellant's attorneys knew, Jack Stanley Rude would be proceeding to trial.

3. The defense attorneys testified that the plea agreement was acceptable to appellant and had they believed it was the result of coercion, they would have advised the district court.

Appellant testified at the hearing admitting that he believed his plea to have been voluntary at the time of entering it, but that he had changed his mind after talking to fellow inmates at the Laramie County, Wyoming Detention Center and several people at the Wyoming State Penitentiary.

Following the hearing, the district court entered its order denying the motion to withdraw appellant's plea of nolo contendere. The district court made specific findings and concluded that appellant had no reasonable basis for any subjective intent or belief that by entering his plea, he would save his father's life. Specifically, the district court found: the district attorney did not condition the acceptance of Jack Stanley Rude's plea upon appellant pleading guilty or nolo contendere; two of appellant's attorneys testified under oath that they did not advise appellant his father's plea was conditioned or dependent upon a plea from appellant; and the taped conversations confirmed that appellant's attorneys advised him his plea was independent (of his father's) and if he was to enter a plea to save his father's life, the district court would not accept his plea.

Appellant now asks this court to reverse the district court's denial of his motion to withdraw his plea of nolo contendere. Appellant contends that in conversations with his attorneys, he was given reason to believe that his plea of nolo contendere was required in order to save his father's plea agreement, *see Rude v. State*, —— P.2d —— (Wyo.1993), and that this subjective understanding tainted the voluntariness of his plea.

The *sworn* testimony by appellant combined with the overwhelming proof submitted by the State shows that appellant's plea was voluntary.

## II. DISCUSSION

The withdrawal of pleas is presently governed by W.R.Cr.P. 32(d) (effective 3/24/92), which states:

> *Plea withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

The present rule is substantially similar to former W.R.Cr.P. 33(d), which provided:

> *Withdrawal of plea of guilty or nolo contendere.*—A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment or conviction and permit the defendant to withdraw his plea.

Our standard of review for withdrawal of a guilty plea is well defined:

> After sentencing, a defendant must justify the withdrawal of a guilty plea by showing manifest injustice. The determination of such a motion is addressed to the discretion of the trial court.

*Flores v. State*, 822 P.2d 369, 371 (Wyo. 1991) (citing *Zanetti v. State*, 783 P.2d 134 (Wyo.1989); *Garnett v. State*, 769 P.2d 371 (Wyo.1989); *Angerhofer v. State*, 758 P.2d 1041 (Wyo.1988); and *Hicklin v. State*, 535

P.2d 743 (Wyo.1975)). "Absent an abuse of that discretion, we will not disturb the result." *Zanetti,* 783 P.2d at 137.

■ Judicial discretion has been defined as " 'a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Id.* (quoting *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986)). "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980).

Although appellant does not assert ineffective assistance of counsel, the district court specifically found that appellant had effective assistance. Appellant contends that a single exchange between him and defense attorney # 1 sustains his belief that unless he entered a plea first, his father would be tried, convicted and executed for his role in the murder of Mary Elizabeth Rude.

■ The term "voluntary," as used by the legal world, is an elusive concept. However, this court has variously defined the term as, " 'free from the influence of any extraneous disturbing cause,' " *Dryden v. State,* 535 P.2d 483, 490 (Wyo.1975) (quoting *State v. Clifford,* 86 Iowa 550, 53 N.W. 299 (1892)); " 'the product of a free and deliberate choice rather than intimidation, coercion, or deception,' " *Frias v. State,* 722 P.2d 135, 142 (Wyo.1986) (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)); and, the absence of "threats or improper influences or promises," *Garcia v. State,* 777 P.2d 603, 606 (Wyo.1989).

The United States Supreme Court's standard, by which the voluntariness of guilty pleas is measured, is as follows:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).

■ To fully explore the voluntariness of appellant's plea, we must begin with the rearraignment of March 6, 1992. The district court, in that proceeding, took extraordinary care in addressing appellant. Appellant affirmatively stated to the district court that he did not suffer from any mental illness or deficiency that would prevent him from *intelligently, knowingly and voluntarily* entering a plea to the charges against him.

The information charging conspiracy to commit second-degree murder was read to appellant and he affirmed that he had discussed the charges with his attorneys on several occasions. The district court went on to explain the elements of the charge and appellant was fully advised of his constitutional rights. The district court explained that because the plea was nolo contendere, the State would make an offer of proof and the district court would then ask appellant to respond. The district court further advised that a plea of nolo contendere, as a practical matter, was equivalent to a plea of guilty.

Appellant advised the district court that he understood his constitutional rights and the consequences of pleading nolo contendere. The district court then noted that a stipulation and agreement (plea agreement) had been filed. The agreement was signed by appellant, two of his attorneys and the prosecutor.

Following the plea, the State presented an offer of proof which was comprised of a detailed recitation of the evidence amassed by the State in its investigation of the murder of Mary Elizabeth Rude. The evidence presented was obviously the product

of untold hours of investigative work by police officers and the office of the district attorney and clearly contained all of the elements of conspiracy to commit murder and definitely implicated appellant as a co-conspirator.

Following the offer of proof, the district court ascertained that appellant wished to continue with a plea of nolo contendere. Appellant was placed under oath and the district court inquired:

THE COURT: I need to ask you: Why are you pleading nolo contendere in this case? Is there any reason why you wish to do that?

THE DEFENDANT: Your Honor, the evidence is overwhelming. There is nothing I can do. It shows my guilt.

THE COURT: Now, there is, of course, the death penalty allegation on the part of the state in this case. Is that playing any part in your decision to go ahead and plead nolo contendere to this information?

THE DEFENDANT: Yes, sir.

THE COURT: To what degree does that play in your decision?

THE DEFENDANT: A large extent, Your Honor.

THE COURT: First of all, you heard the offer of proof here. There appears to be two elements, two aggravating factors. Maybe I could ask [the prosecutor] to go on the record as to what those two factors are.

[PROSECUTOR]: Your Honor, I'm attempting to locate that now. But, without making specific designation to the death penalty statute, the two aggravators are:

Number one, that the homicide was done for pecuniary gain. That's listed specifically under Wyoming Statute 6–2–102(h)(vi).

And that the homicide was committed by an individual who was on probation for a felony, under Wyoming Statute 6–2–102(h)(i)(B).

THE COURT: Very well. Thank you * * *.

So, based on those aggravating factors, I take it, Mr. Rude, you're inclined to go ahead and take the position that you're willing to plead nolo contendere to the second amended information, conspiracy to commit second degree murder; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. Then I need to ask you something else, through your attorney.

[Defense counsel], what agreements have been made in regard to this plea?

[DEFENSE COUNSEL]: The agreement is, as I understand it, as follows. It's the stipulation and agreement, of course, the court has.

THE COURT: We will make it of record.

[DEFENSE COUNSEL]: Thank you.

And it is that Robert is going to plead nolo contendere to conspiracy to commit murder, second degree.

That his sentence will be in the range of 20 to 35 years.

That he is going to—The sentence is 20 to 35 years. I misspoke. He doesn't want it to be a range of a 20–year sentence.

And that the court has indicated to counsel that it is going to be bound by that sentence range.

That Robert understands his constitutional rights, as the court has explained to him, but he's waiving those.

And, furthermore, Robert is not required to make any statements concerning his father in this matter.

And that we're doing a so-called "Alford plea," in going through this process.

And that the charges of first degree murder against Robert will be dismissed with prejudice once his plea is entered.

And that the State of Wyoming will take no further action involving Robert Rude.

THE COURT: Very well.

The district court continued to question appellant:

Now Mr. Rude, other than what's been put on the record in regard to this agreement, has anybody promised you any-

thing else in exchange for your plea of nolo contendere?

THE DEFENDANT: No, sir.

THE COURT: Has anybody threatened you to make you plead guilty—to make you plead nolo contendere?

THE DEFENDANT: No, sir.

THE COURT: Has anybody threatened you [to] make you plead nolo contendere? I want to make sure I have your answer.

THE DEFENDANT: No, sir.

THE COURT: Very well. Is your plea of nolo contendere a voluntary plea?

THE DEFENDANT: Yes.

THE COURT: Do you want to do this?

THE DEFENDANT: Yes, sir.

THE COURT: For the reasons you just stated? Basically, you see the state's case as being overwhelming, and, on the other hand, you see the mitigating factors also present in this case, and you wish to do this as a method of saving your life, as to this. Is that basically your reasoning?

THE DEFENDANT: Yes, sir.

\*   \*   \*   \*   \*   \*

THE COURT: One final thing. Do you have any problems with the quality of representation of [defense counsel] in the way this has proceeded?

THE DEFENDANT: No, sir.

As is evident from the transcript of appellant's re-arraignment, appellant was meticulously informed of the direct consequences of his plea and he expressly acknowledged awareness of these consequences. Additionally, the record reflects that no threats, misrepresentations or bribes were used by any party to induce appellant to plead. Therefore, under the *Brady* standard, as cited previously, appellant's guilty plea was voluntarily entered.

It appears that appellant would like us to expand our definition of voluntariness and the *Brady* standard to include an inquiry into every motivation for the plea. However, no decision is ever made in a vacuum, especially decisions made under the stress of criminal prosecution. Presumably, in reaching a decision, the criminal defendant weighs several competing factors, such as: the strength of the government's case, the likelihood of a lesser sentence, and expediency. In this instance, if it existed, appellant's belief that his father's plea depended on appellant's plea would simply be one of those competing factors.

The taped conversation upon which appellant relies to support involuntariness went as follows:

Robert: Okay. *I take it unless I plead they are not going to accept any of my father's plea bargains?*

Attorney # 1: *I don't think so. If, if need be, these are all independent pleas.* It's, you know, it's like I have told you from day one, you have to do what you think is best for you.

Robert: You know, I understand that. You know, I'm also being put in the position as I was told before *that I'm the only one that can save my father's life, supposedly. That if he goes to trial, okay, that he's going to get fried. No, ifs ands or buts about it.*

Attorney # 1: *Now, we don't care about what, what happens to you[r] father.*

Robert: Right. Well, . . .

Attorney # 2: You should not care about what happens to your father if he killed the woman that you love.

Robert: I, no. That's the part I have problems with because yes, he killed my wife and yes, I hate him for that, but I also, he's been the only person that's stuck by me through anything or everything.

(Emphasis added.)

Appellant's belief concerning the relationship between his and his father's plea was self-induced. He formed the idea based on his interpretation of a conversation with his attorney and he was never told directly or indirectly that his father's plea depended on his plea. In fact, just the opposite was related to appellant when his attorney said, "these are all independent pleas" and "we don't care about what \* \* \* happens to you[r] father." Despite the attorney's advice, appellant continued to harbor the belief that he had to plead to save his father's plea.

It is not the court's responsibility to assure that a defendant makes a prudent decision; instead, all that is required is that the defendant is permitted to make a decision free of " 'intimidation, coercion or deception.' " *Frias,* 722 P.2d at 142 (quoting *Moran,* 475 U.S. at 421, 106 S.Ct. at 1141). "The relevant question for plea withdrawal is not whether the accused was sensitive to external considerations—many defendants are—but instead whether the decision to plead was voluntary, *i.e.* a product of free will." *United States v. Pellerito,* 878 F.2d 1535, 1541 (1st Cir.1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). If defendants were allowed to withdraw their pleas on the basis of a mental reservation, apparent to them at the time of sentencing but non-communicated to the district court or counsel, few pleas could be accepted with certitude.

Appellant, in seeking to withdraw his plea, has the burden of demonstrating manifest injustice. Appellant has failed to carry that burden. The district court took extraordinary care to provide appellant with every constitutional protection from arraignment to the hearing on the motion to withdraw, and we find no abuse of discretion by the district court. The record demonstrates, and it was reasonable for the district court to conclude, that appellant's decision to plead was voluntary.

We affirm.