**Michael WESTMARK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 93–86.

Supreme Court of Wyoming.

Dec. 9, 1993.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, Cheyenne, Bobbi Renner, Laramie, for appellant.

Michael J. Westmark, pro se.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., for appellee.

Before THOMAS, CARDINE, GOLDEN and TAYLOR, JJ., and BROWN, J. (Retired).

BROWN, Justice (Retired).

Appellant Michael Westmark was given permission to go from his usual place of residence, the Wyoming State Penitentiary, to Casper, Wyoming, to transact personal business. He failed to return to the penitentiary at the time specified and pleaded guilty to the charge of escape.

He appeals from the conviction, judgment, and sentence and raises the following issues:

ISSUE I

Did the district court lack jurisdiction to enter a judgment of guilty of escape against appellant when appellant absconded from parole?

ISSUE II

Did the trial court err when it refused to allow the appellant to withdraw his guilty plea?

We affirm.

Appellant, a long-time and trusted resident of the penitentiary, was allowed to journey to Casper on personal business. One of the terms of his temporary leave was that the leave would commence at 7:30 a.m. on May 31, 1991, and would terminate at 10:30 p.m. on the same day.

Unfortunately, appellant's leave was memorialized on WSP form 180, captioned "Temporary Parole Agreement." We will discuss this form later. Suffice it to say at this juncture, the printed portions of the form were mostly inconsistent with appellant's real status.

The ostensible purpose of appellant's sojourn to Casper was so that he could confer with an attorney about a worker's compensation claim and talk to the administration at Casper College. After arriving in Casper, according to appellant, he experienced "extreme back pain." Instead of consulting a medical doctor about his condition, appellant consulted Dr. John Barleycorn and became inebriated. Fearful of being punished back at the penitentiary for drinking, he quit the scene. He never returned; no, he never returned, and his fate was unlearned until December 4, 1992. On that date, he turned himself in to authorities in Green River, Wyoming. Appellant pleaded guilty to the charge of escape and was sentenced to serve a term in the penitentiary, which term was to run consecutive to the sentence he was serving at the time of his escape. Before sentencing, appellant made a motion to withdraw his guilty plea, which motion was denied.

## I.

 In the first issue on appeal, appellant contends that his action did not constitute the crime of "escape" as contemplated by the Wyoming statutes. Appellant was charged and convicted under Wyo.Stat. § 6–5–206(a)(i) (1988). This statute merely states: "A person commits a crime if he escapes from official detention." The remainder of the statute pertains to penalty and is not relevant in this case. Wyo.Stat. § 6–5–201(a)(ii) (1988) provides:

(ii) "Official detention" means arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. "Official detention" does not include supervision on probation or parole or constraint incidental to release on bail[.]

We do not believe that § 6–5–206(a)(i) and § 6–5–201(a)(ii) standing alone are determinative in this case.

Appellant was assigned to the work release program from January 1991 until his

escape on May 31, 1991. Included in the Work Release Act (Wyo.Stat. §§ 7–16–301 to –311 (1988 & Supp.1993)) is § 7–16–309, which provides:

> The intentional act of an inmate of absenting himself without permission from either the place of employment or the designated place of confinement within the time prescribed constitutes an escape from the custody of the institution. Upon apprehension the inmate is subject to return to the institution and ·criminal prosecution for escape.

Section 7–16–302(a)(vi) provides in part: " 'Work release' is not parole as defined by W.S. 7–13–401 but constitutes *an extension of the limits of confinement beyond the boundaries of the institution.*" (Emphasis added.) The definition of parole in Wyo.Stat. § 7–13–401(a)(vii) (Supp.1993)[1] does not seem to correspond with the circumstances of this case. The circumstances here are more nearly a species of work release. Appellant states that he was assigned to the work release program in January of 1991. Between January 1991 and the time of his escape, he experienced back problems and had surgery in March. As a result of his back surgery and some complications, appellant worked, as he stated, "maybe, eight days the whole five months I was on work release." In the proceedings held before the district court, appellant stated that he was in a work release program on May 31, 1991, and that he knew he was in official detention. A short leave to talk to an attorney about a worker's compensation claim is not outside the work release program and is associated with, and could be ·anticipated under, the work release program. Seeing a lawyer about a worker's compensation claim was an extension of the limits of appellant's confinement, being substantially the same as if he were performing some type of more traditional work. It matters not that he left for the consultation from his usual place of residence rather than from a job site.

In determining the true status of appellant when he left the penitentiary, we must consider the intent of both the prison authorities and appellant. We must also consider the understanding of the escapee. He signed a form captioned "Temporary Parole Agreement" before he was released. Merely signing a form with such a title does not convert a leave of absence or furlough into parole. A leave of absence by any other name does not change the character of the leave. The form used by the penitentiary, "WSP—180," does not fit the circumstances of appellant's leave. For example, among other restrictions, the form provided that the person signing would "not enter into marriage, purchase an automobile, incur indebtedness, or execute contracts for merchandise or property requiring installment payments." This does not fit the terms of appellant's leave. This form apparently is used as an expedient by the penitentiary in a variety of circumstances.

Whether appellant was on a leave of absence, furlough, or whatever, he did not return to his nest at 10:30 p.m. (aptly referred to by the State as the "witching hour") on May 31, 1991. At this magic hour, appellant was in the constructive custody of the penitentiary in that the limits of his confinement had been extended.

The statutes we have referred to· are general in nature. Every conceivable type of leave from the penitentiary cannot be specifically provided for in detail by legislation. For example, the statutes do not specify the status of an inmate who has been given leave to see an attorney or a doctor. Therefore, we must fit the circumstances of this case into general statutes, if we can. As we understand it, appellant is saying that at the time of arraignment he thought he had escaped from official detention; however, after further reflection and consultation with appointed counsel and in-house counsel, he changed his mind and now believes that his conduct was only a parole violation.

1. " 'Parole' means permission to leave the confines of the institution in which a person is confined under specified conditions." Section 7–13–401(a)(vii).

▮ In *Peper v. State,* 768 P.2d 26 (Wyo. 1989), this Court crafted principles which are applicable to this case. In *Peper,* the appellant walked away from a community correctional facility and was charged with escape under § 6–5–206. Peper claimed, as does appellant here, that he was not in "official detention." In *Peper,* the appellant disregarded the fact that departure from a community correction facility is governed by § 6–5–206. The Court held in that case that placement in a community correction facility falls within the definition of "official detention." We hold here, consistent with the holding in *Peper,* that placement in the work release program falls within the definition of "official detention." We conclude, therefore, that the circumstances here more nearly resemble a part of the work release program than they resemble traditional parole.

## II.

In the second issue raised by appellant, he contends that it was error for the court to refuse to allow him to withdraw his guilty plea. The main thrust of this argument is that there was not a factual basis for a guilty plea in that the facts described in court did not constitute the crime of escape. In our discussion of the first issue, we determined that appellant's actions did in fact amount to escape under § 6–5–206(a)(i). That determination answers the main thrust of appellant's argument on the second issue.

Appellant filed a seemingly scholarly pro se brief with respect to the second issue. He attacks the alleged improvident guilty plea from a slightly different angle. In the pro se brief, appellant discusses his lack of knowledge that he was in "official detention." He states that he was told he was on parole. There is no record citation for this advice. He further states that he was without knowledge that he was not on parole and, therefore, could not have knowingly and intentionally committed the crime of escape. In his brief, appellant discusses "*mens rea,*" "*scienter,*" "culpable mental state," "guilty mind," and other awesome terms. Appellant, in his pro se brief, has

not cited authority or favored us with cogent argument to demonstrate how these terms have any application in this case.

▮ It may be argued that, when appellant admitted he was in "official detention" and in the work release program on May 31, 1991, he was making conclusions only. However, the uncontroverted facts we have related justify these conclusions. Misinterpreting the law before entering his plea of guilty is not a basis for withdrawing his guilty plea. In *Peper,* the court stated:

Appellant also asserts that the district court erred in denying his motion to withdraw his plea. To prevail on this point he must establish that such a denial was an abuse of discretion, and he must provide a "plausible reason" for granting the motion. *Chorniak v. State,* 715 P.2d 1162, 1164 (Wyo.1986). That is, he must show that fairness and justice require the withdrawal of his guilty plea, as would be the case where the record demonstrates that the plea was made in the face of a meritorious defense or continued assertions of innocence. *Wright v. State,* 703 P.2d 1102, 1104 (Wyo.1985). Such is not the case here where appellant premises his alleged innocence, and/or his alleged defense, solely on an erroneous interpretation of the statute under which he was charged. Furthermore, this misinterpretation was conceived after the court had properly informed him of the charge and had determined that he pled voluntarily. Although the grant or denial of a motion to withdraw a guilty plea is a reviewable exercise of the district court's discretion, there can be no abuse of that discretion where the record shows that the plea was voluntary and made with a full understanding of the consequences, and where the trial court found a factual basis for that plea.

768 P.2d at 30.

The record demonstrates that the district court substantially complied with W.R.Cr.P. 11. Appellant does not contend otherwise except for his contention that

there was not a factual basis for a plea of guilty. We addressed this concern in the first issue. There was a factual basis for appellant's plea of guilty. His actions constituted the crime of escape. Furthermore, the court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea.

Affirmed.