Chester Loyde **BIRD, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 94–159.

Supreme Court of Wyoming.

Aug. 28, 1995.

Rehearing Denied Sept. 15, 1995.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender; and Deborah Cornia, Appellate Counsel, for appellant.

Joseph B. Meyer, Attorney General; Sylvia Lee Hackl, Deputy Attorney General; D. Michael Pauling, Mary Beth Wolff, Senior Assistant Attorneys General; Prosecution Assistance Program, Theodore E. Lauer, Director, and Cole Loftus, Student Intern., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The issue raised in this case is whether the trial court abused its discretion when it refused to allow Chester Loyde Bird (Bird) to withdraw his pleas of guilty to sexual assault in the first degree,[1] and kidnapping,[2] which were accompanied by his admission of the status of a habitual criminal.[3] At arraignment, the trial court furnished incorrect advice as to the maximum punishment. Bird was told three consecutive life sentences could be imposed when, in fact, there was a potential for only two consecutive life sentences. Bird also complains of an insufficient factual basis for his pleas of guilty. We are cognizant of, and emphasize, the desirability of precision and accuracy on the part of both the prosecution and the court in dealing with the acceptance of pleas of guilty. In this instance, however, we are unable to perceive any prejudice to Bird because he entered his pleas of guilty after being told he could receive the greater punishment, and he persisted in those pleas after being advised of the lesser punishment. We also are satisfied the record encompasses a factual basis sufficient to support Bird's pleas of guilty and assure the court of their accuracy. We affirm the denial by the trial court of Bird's efforts to withdraw his pleas of guilty.

In his Brief of the Appellant, Bird states these issues:

1. WYO.STAT. § 6-2-302 (1988) defines sexual assault in the first degree and provides, in pertinent part:
   (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
   (i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement * * *.

2. WYO.STAT. § 6-2-201 (1988) defines kidnapping and provides, in pertinent part:
   (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:
   *   *   *   *   *   *
   (ii) Facilitate the commission of a felony; or
   *   *   *   *   *   *
   (b) A removal or confinement is unlawful if it is accomplished:
   (i) By force, threat or deception * * *.

I. Did the trial court err in its failure to comply with the mandates of Rule 11 W.R.Cr.P. in accepting appellant's guilty pleas?

II. Did the trial court abuse its discretion in not allowing withdrawal of appellant's guilty pleas?

The State, in the Brief of the Appellee, restates the issues in this way:

I. Did the district court properly follow Rule 11, W.R.Cr.P., in its acceptance of appellant's guilty pleas?

II. Did the district court properly deny appellant's request to withdraw his guilty pleas?

We weigh Bird's contentions against WYO. R.CRIM.P. 11, which provides, in pertinent part, with respect to pleas:

(a) *Alternatives.*

(1) In General.—A defendant may plead not guilty, not guilty by reason of mental illness or deficiency, guilty, or nolo contendere. * * *

*   *   *   *   *   *

(b) *Advice to Defendant.*—Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony * * * the court must address the

3. WYO.STAT. § 6-10-201 (1988) defines the status of a habitual criminal and also provides for enhanced punishments, stating:
   (a) A person is an habitual criminal if:
   (i) He is convicted of a violent felony; and
   (ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.
   (b) An habitual criminal shall be punished by imprisonment for:
   (i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;
   (ii) Life, if he has three (3) or more previous convictions.

defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and **the maximum possible penalty provided by law** [emphasis added] and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, *etc.*) and, in controlled substance offenses, the potential loss of entitlement to federal benefits. However:

(A) Disclosure of specific dollar amounts is not required;

(B) Failure to advise of assessments or possible entitlement forfeitures shall not invalidate a guilty plea, but assessments, the general nature of which were not disclosed to the defendant, may not be imposed upon the defendant unless the defendant is afforded an opportunity to withdraw the guilty plea; and

(C) If assessments or forfeitures are imposed without proper disclosure a request for relief shall be addressed to the trial court under Rule 35 before an appeal may be taken on that issue.

\*     \*     \*     \*     \*     \*

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

\*     \*     \*     \*     \*     \*

(f) *Determining accuracy of plea.*—Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

\*     \*     \*     \*     \*     \*

(h) *Harmless error.*—Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

The primary contention by Bird is that a violation of Wyo.R.Crim.P. 11(b)(1) occurred at his arraignment because the maximum possible punishment was overstated. Bird's contention elevates the concept of technical error to new heights and could even be described as pressing technical error to the ultimate. He argues, because of this error, the trial court committed an abuse of discretion in refusing to permit him to withdraw his pleas of guilty after he was sentenced to two life terms to run concurrently instead of the three consecutive life terms pronounced prior to his pleas.

The information charged sexual assault in the first degree in Count I and kidnapping in Count II. The felonies charged in Counts I and II of the information are violent felonies as defined in Wyo.Stat. § 6–1–104 (1988). In what was set forth as Count III, the information alleged Bird had been convicted of felonies on two or more previous charges, separately brought and tried, which arose out of separate occurrences. These prior convictions made Bird eligible for life sentences pursuant to Wyo.Stat. § 6–10–201(b)(ii) (1988).

The record discloses the trial judge read the information to Bird when he appeared in the district court for arraignment. The judge also read the Wyoming statutes defining sexual assault and its attendant penalties; kidnapping and its attendant penalties; and the habitual criminal statute leading to enhanced penalties. In informing Bird of the "maximum possible penalty provided by law," the trial judge stated:

If you plead guilty or if the court were to find you guilty on all of these to the maximum extent with what I will call the worst fact situation as alleged in the information, it would appear that you could receive three life sentences.

Continuing with the litany required in Wyo.R.Crim.P. 11, the judge advised Bird of the mandatory and discretionary assessments that could be imposed. He explained

to Bird the consequences of entering a plea of guilty. The judge specifically asked Bird if he understood the charges against him, and Bird replied, "Yes, I do." The judge then asked, "Do you feel you understand the possible penalties and consequences should you plead guilty or be convicted?" Bird again replied, "Yes, I do." After that, the judge continued by explaining to Bird the constitutional rights available to one charged with a crime. He determined Bird had discussed the facts of his situation with his attorney. He was informed Bird's questions to his attorney had been answered; the legal procedures had been explained to him; he had been advised about the law; and he had faith and confidence in the ability of his lawyer.

The judge then made the determination that Bird's pleas were voluntary and, although some negotiations had occurred, no plea agreement had been reached. Bird was informed by the judge of the rights he would waive if he entered a plea of guilty. When he was asked if he understood those rights and that he would be giving up those rights by pleading guilty, Bird replied, "Yes, I do." Bird declined the opportunity to ask any questions. He then entered pleas of guilty to first degree sexual assault, aggravated kidnapping, and he admitted the status of a habitual criminal based upon three prior convictions. The trial judge asked, "Mr. Bird, is there any reason the court should not accept your guilty pleas?" Bird's reply was, "Not that I know of, Your Honor." The court then accepted Bird's pleas.

At the same hearing, Bird elected to proceed immediately to sentencing without the benefit of a presentence investigation. At that time, the court entered into a colloquy with counsel, in the presence of Bird, with respect to the sentencing:

THE COURT: All right. I guess I'll hear additional comments and recommendations or other information appropriate for sentencing from the state.

STATE'S ATTORNEY: The only complication is whether or not Mr. Bird will receive a life sentence enhancement on the first degree sexual assault and the aggravated kidnapping. The concern I have is that if Mr. Bird was convicted of first degree sexual assault and aggravated kidnapping, those sentences would have to run concurrently because they arose out of one occurrence. I think that's what the law is.

So I don't believe that we can give him consecutive life sentences because they arose out of one occurrence, and it's my belief that he receives enhancement of two life sentences that are concurrent.

THE COURT: So one life sentence out of Counts I and II, and a life sentence on Count III, but both those two life sentences to run concurrently?

STATE'S ATTORNEY: No. I think what the law is—* * * [Bird's attorney] has some case law here. So he can correct me if I'm wrong—but Count III is not, he's not even sentenced on Count III. Count III is—acts as an enhancement on Counts I and II. And he would receive two life sentences on Count I—life sentence on Count I and a life sentence on Count II, and those run concurrently. And there is no separate sentence on Count III. It's just an enhancement.

THE COURT: All right. * * *

BIRD'S ATTORNEY: I'd point out to the state—or to the court Evans versus State, 655 P.2d, page 1214, provides, in short, that sentencing a defendant for a felony and then sentencing him again for his status of habitual criminal does violate the double jeopardy provision of the constitution.

THE COURT: So you agree with the position of [State's attorney] on that?

BIRD'S ATTORNEY: Yeah. The question is whether or not he receives two life sentences concurrent, or just one life sentence out of the whole deal.

* * * * * *

THE COURT: All right.

Mr. Bird, do you have any comments that you'd like to make to the court with regard to sentencing?

THE DEFENDANT: No, Your Honor.

THE COURT: Any reason the court should not announce sentence at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: Well, considering the evidence presented, the admissions of the defendant, the court will proceed to sentencing then.

The court imposed a life sentence for sexual assault in the first degree as charged in Count I, and a life sentence for kidnapping as charged in Count II, making the life sentences to run concurrently. At no time prior to the entry of sentencing did Bird offer any objection.

Sometime after the Judgment and Sentence was entered, Bird wrote a letter to the trial court in which he asked to withdraw his pleas of guilty. The court simply forwarded that letter to Bird's attorney. Bird then appealed from the automatic denial of his request to withdraw his pleas. The withdrawal of a plea of guilty is governed by WYO.R.CRIM.P. 32(d), which provides:

> *Plea withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. **At any later time, a plea may be set aside only to correct manifest injustice.** (Emphasis added.)

■ Bird first contends the trial court failed to comply with the requirements articulated in WYO.R.CRIM.P. 11(b)(1) because he was not informed of the true nature of the charges and the penalties that could be imposed upon him. Specifically, he points to the statement by the trial judge that the maximum possible penalty could be three consecutive life sentences. Bird claims this inaccuracy prevented his plea from being a voluntary one. The State argues no substantial rights belonging to Bird were affected or denied when the district court misstated the maximum punishment of three life sentences, and Bird did not demonstrate a manifest injustice had occurred even though there was an inaccuracy.

■ The substance of WYO.R.CRIM.P. 11 was first adopted in 1968 as WYO.R.CRIM.P. 15. In *Stice v. State*, 799 P.2d 1204, 1209 (Wyo.1990), the purposes of this rule were said to be:

We do not approve of the trial court's failure to comply with the requirements of the rule and direct strict compliance in the future. *York v. State*, 619 P.2d 391, 398 (Wyo.1980). However, the purposes behind the requirements of the rule were served. Those purposes are to assist the judge in making the constitutionally required determination that a defendant's plea is truly voluntary, to produce a complete record at the time the plea was entered of the factors relevant to this voluntariness determination, and to enable more expeditious disposition of the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas. *Britain v. State*, 497 P.2d 543, 545 (Wyo.1972). Stice was not prejudiced by the deviation. *Cf. York*, 619 P.2d at 398. We hold that the trial court's error was harmless beyond a reasonable doubt.

Both the Supreme Court of the United States and our court demanded full and exact compliance with the rule. *McCarthy v. United States*, 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969), and *Britain v. State*, 497 P.2d 543 (Wyo.1972).

In the revision of the WYOMING RULES OF CRIMINAL PROCEDURE, effective March 24, 1992, the rule was renumbered to become WYO.R.CRIM.P. 11, and it is substantially the same as Rule 11 of the FEDERAL RULES OF CRIMINAL PROCEDURE. For the first time subsection (h) was included in our rules to address the concept of harmless error.

■ WYO.R.CRIM.P. 11 is intended to insure that a plea by a defendant is intelligent, knowing, and voluntary. *Triplett v. State*, 802 P.2d 162 (Wyo.1990). The record in this case demonstrates the trial court did ascertain Bird's intelligence, his knowledge with respect to the matter, and the voluntariness of his plea of guilty. There is no question, however, that the trial court initially failed to advise Bird correctly with respect to the maximum penalties that could be imposed.

■ Wyoming law is clear, and has been for some time, that the status of a habitual criminal is just that, and it is not a separate offense. *Schuler v. State*, 668 P.2d 1333 (Wyo.1983). There is little justification for

the trial court's lack of awareness that no separate penalty could be imposed pursuant to WYO.STAT. § 6–10–201. That statute serves only as a vehicle to enhance sentences that otherwise could be imposed for the specific crime charged.

In *United States v. Johnson,* 1 F.3d 296, 298 (5th Cir.1993) (*en banc*), the court applied a harmless error analysis pursuant to FED.R.CRIM.P. 11(h). The analysis, like other issues relating to harmless error, requires there first be a determination of error in the proceedings. If error is found, the court then must determine whether the error did affect any substantial right of the accused. Because it is clear the trial court initially did misadvise Bird as to the maximum penalties that could be imposed, we address this case under harmless error with the object of our scrutiny being whether this error affected any substantial rights belonging to Bird.

■ In our interpretation of our WYOMING RULES OF CRIMINAL PROCEDURE having their source in the federal rules, we afford great persuasive weight to federal precedent. As we recently said:

The pertinent language of Former Rule 15 was identical to the pre–1983 version of Rule 11 of the Federal Rules of Criminal Procedure. 1 Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d,* § 171 (1982 & Supp.1993). *See Britain v. State,* 497 P.2d 543, 545 (Wyo.1972). The present F.R.Cr.P. 11, as amended in 1983, is substantially similar to revised W.R.Cr.P. 11 which became effective March 24, 1992. In adopting rules which are substantially similar to the Federal Rules of Criminal Procedure, this court has traditionally given great weight to relevant precedent from federal courts, particularly the Supreme Court of the United States. *See, e.g., Farbotnik v. State,* 850 P.2d 594, 603–04 (Wyo.1993) and *Dobbins v. State,* 483 P.2d 255, 258 (Wyo.1971).

*Mehring v. State,* 860 P.2d 1101, 1107 (Wyo. 1993).

In dealing with a substantially similar issue, the United States Court of Appeals for the Fifth Circuit sitting *en banc,* resolved a case in which the trial court overstated the maximum punishment in receiving a plea of guilty. The issue was presented by collateral attack pursuant to the federal post-conviction statute, and the court said:

*Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974), appropriately states the standard for consideration of a § 2255 [28 U.S.C.A. § 2255, federal standard for post-sentence relief] motion:

This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. In *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468 [471], 7 L.Ed.2d 417 (1962), for example, we held that "collateral relief is not available when all that is shown is a failure to comply with the formal requirements" of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t * * * present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Id.,* at 428, 82 S.Ct. at 471 (internal quotation marks omitted) * * *.

In *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 [471], 7 L.Ed.2d 417 (1962), cited in *Davis,* the Supreme Court said:

The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Bowen v. John-*

ston, 306 U.S. 19, 27, 59 S.Ct. 442 [446], 83 L.Ed. 455. * * *

As Judge Coleman stated in *Howard v. United States*, 580 F.2d 716 (5th Cir.1978) (a case involving Rule 11 prior to the 1975 amendments):

> The readily apparent teaching of *Davis* is that while certain nonconstitutional errors of law are within the coverage of § 2255 not every such error can be raised on a § 2255 motion; in other words, such errors are not to be held fatal on a *per se* basis. The foremost requirement is that there must be an indicated prejudice to the defendant and the claimed error must have been a fundamental defect which *inherently* results in a miscarriage of justice, presenting exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

*Keel v. U.S.*, 585 F.2d 110, 113–14 (5th Cir. 1978).

This case is similar to *Keel* in that it is not a direct appeal from a plea of guilty but, instead, is an appeal from the denial of a motion to withdraw a plea of guilty (essentially a collateral attack). We find *Keel* to be highly persuasive and entitled to great weight as relevant precedent. We cannot discern how Bird was prejudiced in any way by the initial misstatement of the maximum sentence. That misstatement was corrected in Bird's presence prior to sentencing and Bird, in fact, was sentenced to only two, not three, life sentences which were made to run concurrently.[4] Bird had an opportunity to comment with respect to sentencing, and another opportunity to inform the court of any reason why it should not pronounce sentence. He declined each offer.

Bird does not claim, nor can he, that he was threatened, directly or indirectly, with three consecutive life sentences should he not plead guilty. The misstatement occurred after Bird had advised the court through coun-

sel of his desire to enter pleas of guilty. The erroneous statement did not induce Bird to change his plea from not guilty to guilty. The State's position rather promptly was articulated that Bird could only receive two life sentences, and that they should be imposed to run concurrently. The actual sentence imposed was consistent with the position of the State and Bird, speaking through his attorney. While it is clear the trial court misadvised Bird with respect to the maximum penalty contrary to the requirement of Wyo.R.Crim.P. 11(b)(1), that error was harmless in light of the entire record. We are satisfied no substantial right held by Bird was affected, and he was not prejudiced in any respect. No miscarriage of justice occurred.

■ Bird also contends his pleas of guilty were invalid because the court did not have a sufficient factual basis to determine the accuracy of the pleas under Wyo. R.Crim.P. 11(f). We have held one way to establish this factual basis is for the accused to describe the conduct out of which the charge arises. *Sanchez v. State*, 592 P.2d 1130 (Wyo.1979). In this regard, the record also is clear.

In ascertaining the factual basis for Bird's pleas, the judge first asked, "What, what did you do that brings you to court on these two charges?" Bird's reply was, "As alleged, Your Honor, I did kidnap [the victim] and I did rape her." Bird then described waiting outside a convenience store for the victim to return to her truck; forcing her into her truck at knifepoint; and driving her to another location in Campbell County with the knife in his hand resting on her left shoulder pointing at her neck. Bird continued with his description of the facts, stating he removed her clothing with her assistance, but "I believe it [her assistance] was because she was afraid, Your Honor." Bird admitted he stood guard over the victim while she urinated; he decided to rape her; he did rape her; and he apologized for raping her. In addition, the

---

4. We note the assumption by the State's attorney that the sexual assault and the kidnapping charge would merge for purposes of sentencing. These offenses involve different statutory elements (*see State v. Keffer*, 860 P.2d 1118 (Wyo. 1993)), and under such circumstances, our rule

is that the legislature intended separate punishments. In *McDermott v. State*, 870 P.2d 339 (Wyo.1994), we held the crimes of sexual assault and kidnapping did not merge for purposes of sentencing.

record discloses a sexual assault examination of the victim at the hospital revealed seminal fluid. We are puzzled as to how Bird can contend the requirements of WYO.R.CRIM.P. 11(f) were not satisfied in this case. Bird's statements to the trial court, together with the sexual assault examination results, afforded ample factual basis to permit the trial court to determine the accuracy of his pleas of guilty.

■ We require that the defendant demonstrate an abuse of discretion by the trial court in denying a motion to withdraw a plea of guilty. *E.g., Westmark v. State,* 864 P.2d 1031 (Wyo.1993); *Rude v. State,* 851 P.2d 20 (Wyo.1993); *Flores v. State,* 822 P.2d 369 (Wyo.1991); *Peper v. State,* 768 P.2d 26 (Wyo.1989). In *Martin v. State,* 720 P.2d 894 (Wyo.1986), we quoted our then traditional description of abuse of discretion at 896:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *" *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

We added to it, however, an additional useful definition at 897:

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

While Bird contends his pleas of guilty were unknowing and involuntary because of errors occurring at the arraignment proceedings, particularly because WYO.R.CRIM.P. 11(b)(1) was violated, and there was an insufficient factual basis, we have already explained what the record demonstrates in those regards.

■ While it is clear the trial court, at one point, did furnish erroneous advice as to the maximum sentence, that advice overstated rather than understated the sentence. Bird was offered the opportunity to object to the imposition of sentence, and he declined. Bird's substantial rights were not affected; he was not prejudiced; no miscarriage of justice or manifest injustice occurred; and the error clearly was harmless. The record is more than sufficient to support the factual basis for Bird's pleas of guilty in order to permit the trial court to determine their accuracy. Under these circumstances, the trial court could reasonably conclude, and it apparently did, that Bird was not entitled to relief. The trial court did not commit an error of law in refusing to permit him to withdraw his pleas of guilty. The trial court exercised sound judgment with respect to what is right under the circumstances. Bird had the burden of demonstrating a manifest injustice occurred. *Rude,* 851 P.2d 20; *Zanetti v. State,* 783 P.2d 134 (Wyo.1989); *Angerhofer v. State,* 758 P.2d 1041 (Wyo.1988). Bird utterly failed to satisfy this burden. There was no abuse of discretion.

Bird injects into his brief numerous complaints which include claims that: a plea bargain agreement existed pursuant to which the State agreed to recommend concurrent life sentences; an argument he received no benefit from his pleas of guilty; an assertion he was coerced by promises made by the State and by threats of prosecution for other crimes; a claim his defense counsel should have challenged the warrant and information; a contention assistance furnished by his counsel was ineffective; a claim the two counts merged and should carry only one life sentence; an argument the death of Bird's defense attorney after Bird's sentence was prejudicial to him; an assertion there would be no inconvenience to the court and State if he were allowed to withdraw his pleas; and a claim he was denied his right to cast reasonable doubt upon the State's case.

■ To justify these claims, in part, Bird has attached two appendices to his brief. These appendices were not part of the record. We admonish counsel Bird's appendices are not part of the record on appeal, and it was inappropriate to include them in the brief. Our WYO.R.APP.P. 3.01 entitled "Com-

position of record" identifies those matters of record in the trial court appropriate for inclusion in the record on appeal. We can only decide the issues before us on the record, and we do not consider documents such as those appended to the Brief of the Appellant. When we limit our consideration to the record, there is no support for any of Bird's miscellaneous claims, and there certainly is no error with respect to any of them.

We hold the trial court did not abuse its discretion in refusing to permit Bird to withdraw his pleas of guilty after his sentence. Absent a demonstration of specific prejudice such as a change in the plea decision, which Bird has not shown, advice to the defendant of a greater sentence than can actually be imposed cannot be prejudicial to the defendant. There was no prejudice to Bird with respect to the advice as to sentencing; there was ample factual basis to support the determination of the court with respect to the accuracy of Bird's pleas; the sentence was correct under the statute.

Prosecutors and trial courts, however, are urged to be more precise in their acceptance of pleas pursuant to WYO.R.CRIM.P. 11. There should be no necessity to invoke subdivision (h) of the rule treating with harmless error.

The denial of Bird's motion to withdraw his pleas of guilty after sentencing is affirmed.