Chester Loyde BIRD, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–70.

Supreme Court of Wyoming.

June 17, 1997.

Tim Newcomb of Grant & Newcomb, Laramie, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Having pled guilty to first-degree sexual assault and kidnapping, appellant attempted to withdraw those pleas claiming they were vitiated by the district court's misstatement during arraignment of potential penalties attendant upon conviction. Rebuffed in that motion to withdraw and the appeal thereof, *Bird v. State*, 901 P.2d 1123 (Wyo.1995) (*Bird I*), appellant now reaches further back in time to assert that his guilty pleas were actually the product of police coercion. Appellant's failure to raise coercion in his initial motion to withdraw his guilty pleas may speak loudest as to the authenticity of the claim, but we reject it primarily because it is contradicted by the record he has provided.

## I.  ISSUES

Appellant, Chester Loyde Bird (Bird), proposes two issues:

> Issue I Did the trial court impermissibly violate Constitutional law by denying Mr. Bird's request for an evidentiary hearing in order to challenge the voluntariness of his guilty pleas?

> Issue II Did the trial court illegally sentence Mr. Bird to the extent it assessed a $50 surcharge to the Crime Victims Fund for "Count III," habitual criminal status?

Appellee, the State of Wyoming, articulates its issues:

> I.  Whether the trial court properly denied appellant's motion to withdraw his guilty plea without a hearing.

> II.  Whether the trial court properly imposed a crime victims surcharge on appellant.

## II.  FACTS

On February 13, 1994, Bird kidnapped a woman at knife-point from the parking lot of a Gillette, Wyoming grocery store, taking her to a secluded area where he raped her. The victim gave authorities a description of her assailant, telling them he wore a blue-hooded sweatshirt and identified himself as "Shannon." Three days after the abduction and attack, the victim positively identified Bird from a photographic array of similarly attired men of similar stature and appearance. Immediately after being taken into custody, Bird fully detailed his crimes and acknowledged telling the victim his name was Shannon. He also told investigating officers where he had left his blue-hooded sweatshirt, which was subsequently recovered. The knife he admitted using in the attack was recovered from the victim's vehicle, where the attack took place. Bird's personal description of his acts, first made prior to his incarceration, was almost immediately repeated into a tape recorder before finally being reiterated, virtually verbatim, in open court and under oath. *See Bird I*, 901 P.2d at 1130. *Bird I* affirmed the district court's denial of Bird's first motion to withdraw his guilty pleas.

Predicated upon an alleged failure to adhere to the requirements of W.R.Cr.P. 11, Bird's first motion for withdrawal of pleas was not initiated until after he was incarcerated at the Wyoming State Penitentiary, far from the Campbell County Detention Center inmate whose threatening presence he now blames for his allegedly false guilty pleas. Bird's first motion failed to allege that his pleas were falsely sworn. Only when the district court's denial of that first motion was appealed to this court did Bird first broach his allegations of coerced confessions through attachment of appendices to his initial appellate brief. *See Bird I*, 901 P.2d at 1131–32.

Bird's belatedly recovered memory of having borne false witness to the commission of two crimes, each carrying a maximum penalty of life imprisonment, was rejected in the context of his first appeal for lack of record support. *Id.* Bird's counsel sought a second avenue of appeal, this time attaching some thirty exhibits to his retooled motion to withdraw guilty pleas in order that the record would include all those materials which he concludes point to the alleged falsity of his guilty pleas. Following the district court's denial of his second motion to withdraw his guilty pleas, Bird now complains the magnitude of exhibits filed below should, at the very least, have earned him an evidentiary hearing in the district court.

### III. STANDARD OF REVIEW

There is no confusion as to the standards by which we review a district court's denial of a motion to withdraw a guilty plea. Analysis of any such motion necessarily begins with a determination of whether the trial court properly observed the procedural mandates of W.R.Cr.P. 11 in accepting the plea, thus vindicating the purposes behind that rule:

> Those purposes are to assist the judge in making the constitutionally required determination that a defendant's plea is truly voluntary, to produce a complete record at the time the plea was entered of the factors relevant to this voluntariness determination, and to enable more expeditious disposition of the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas. *Britain v. State,* 497 P.2d 543, 545 (Wyo. 1972).

*Stice v. State,* 799 P.2d 1204, 1209 (Wyo.1990) (interpreting former W.R.Cr.P. 15, now W.R.Cr.P. 11). The import of strict adherence to W.R.Cr.P. 11 is underscored by our insistence that any deviation from the procedure there detailed must be harmless **beyond a reasonable doubt** lest a defendant be allowed to plead anew. *Stice,* 799 P.2d at 1208.

■ When, however, the strictures of W.R.Cr.P. 11 have been properly applied and an appellant subsequently alleges the existence of facts which demonstrate a defective plea, the issue is no longer one of procedure but one of fact, and an entirely different standard pertains. Under such circumstances, we will not reverse a district court's denial of a motion to withdraw a guilty plea unless the appellant can establish that the district court could not have reasonably concluded as it did and, as a result, clearly abused its discretion. *Bird I,* 901 P.2d at 1128, 1131; *Rude v. State,* 851 P.2d 20, 22–23 (Wyo.1993). Furthermore, when the factual validity of a guilty plea is contested following sentencing, appellant must show that the district court's abuse of discretion engendered nothing less than a "manifest injustice." *Bird I,* 901 P.2d at 1128.

The process by which we distinguish measured discretion in the acceptance of a guilty plea from that which has been abused, is based upon the federal model:

> The federal courts use what is essentially a two-part test for determining when a hearing [on a motion to withdraw a guilty plea] is necessary. First, if the defendant alleges facts which, if true, would entitle him to relief, the trial court must hold a hearing. *United States v. Fournier,* 594 F.2d 276 (1st Cir.1979). To prevent a possible deluge of unnecessary court proceedings, the second element of the test allows a trial court to deny a hearing if the defendant's allegations are contradicted by the record, are inherently unreliable, or are merely conclusions rather than statements of fact.

*Coleman v. State,* 843 P.2d 558, 559–60 (Wyo. 1992). In the analogous situation of a defendant who seeks an evidentiary hearing on a petition for post-conviction relief, we have held that naked allegations, unsupported by cogent depositions or affidavits, are inherently unreliable and will not merit an evidentiary hearing where the defendant could mount no case other than his own testimony in support of the petition. *Id.* at 560 n. 3; *Pote v. State,* 733 P.2d 1018, 1022 (Wyo.1987).

### IV. DISCUSSION

■ The theory of this appeal is that law enforcement authorities skillfully and surreptitiously impressed upon Bird the details of his alleged crimes, prior to his guilty pleas.

This process is alleged to have continued until Bird had gained familiarity with the kidnapping and rape sufficient to parrot back guilty pleas bearing factual indicia of reliability, notwithstanding his tardily claimed innocence. The motive for those false pleas is alleged to have been the presence of the victim's son in the Campbell County Detention Center population and law enforcement's threat to reveal Bird's identity to that individual, thus placing Bird in mortal danger. Having alleged a specific factual scenario, Bird insists he should have been afforded an evidentiary hearing in the district court. Other than his own testimony, however, Bird offers no independent evidentiary basis for his allegations.

Analysis of this rather intricate scenario must begin with recognition that the law of the case, and the district court's compliance with W.R.Cr.P. 11, was established in *Bird I*, 901 P.2d 1123. Therefore, assuming *arguendo* that his allegations are *not* conclusory, Bird's entitlement to an evidentiary hearing in the district court remains a function of claims neither contradicted by the record nor inherently unreliable. *Coleman*, 843 P.2d at 560. Bird's claims fail on both counts.

Notwithstanding the numerous attached exhibits, Bird's motion is clearly insufficient, *ab initio*, due to his failure to attach affidavits or depositions suggesting that any evidence save his own testimony might be employed to create an issue of fact. *See Pote*, 733 P.2d at 1022. Far from creating doubt as to the validity of his pleas, Bird's exhibits supply all the contradiction necessary to deflate his elaborate conspiracy theory. Particularly problematic is the full confession given by Bird when first taken into custody, only to be quickly repeated into a tape recorder before law enforcement authorities had any opportunity to impress their version of events upon him, let alone place him in harm's way at the Campbell County Detention Center. Although his exhibits include police reports detailing his immediate confessions, neither his motion nor his appellate brief explain how those confessions could have been the product of suggestion or coercion.

Offering no witness save himself and no theory save one which is clearly contradicted by his own exhibits, Bird simply provided the district court with no basis for an evidentiary hearing on his motion.

Bird's problems are only compounded by his failure to explain why he concludes he is innocent or suggest any facts which might tend to establish his innocence. His own exhibits establish the overwhelming extent of evidence apart from the confession he would now recant. If he was not the kidnapper and rapist, how could the victim have chosen him from a photographic array and described the blue-hooded sweatshirt which Bird subsequently led the authorities to? If Bird's criminal enterprise did not succeed by dint of terror, how is it that his knife was recovered from the victim's automobile where the attack occurred? Neither Bird's motion to the district court nor his appellate brief offer any theory upon which the damning case against him might be overcome.

Primarily in letters directed to his now deceased trial counsel, Bird did offer the suggestion that the rape plea, at least, might be vitiated by the victim's consent. Such a suggestion was apparently rejected by Bird's legal representatives since it was not made a part of Bird's first motion to withdraw his guilty pleas. Disregarding all the other deficiencies in Bird's quest for an evidentiary hearing, his own Exhibit No. 29 weakens the reliability of his consent claim rendering it unworthy of an evidentiary hearing. That exhibit details Bird's 1991 guilty plea to a charge of second-degree sexual assault. In providing a factual basis therefor, Bird admitted to stalking that victim and using a knife to accomplish that forcible rape. Any question as to the admissibility of such evidence pursuant to W.R.E. 404 is rendered moot by Bird's designation of his plea to the earlier knife-point rape as one of his exhibits. *DeWitt v. State*, 917 P.2d 1144, 1147 (Wyo. 1996).

In short, Bird's theory of why he should be permitted to plead anew is patently contradicted by the record. Even in the absence of such contradiction, Bird's request for an evidentiary hearing must fail because he offers

nc support for his allegations save his own testimony.

As an afterthought, Bird alleges that being a habitual criminal is a status rather than a separate crime, meaning the district court's alleged intent to levy a $50.00 per crime surcharge in favor of the crime victim's compensation fund should total only $100.00 rather than the $150.00 sum assessed during sentencing and reiterated in the judgment and sentence. Acknowledging that the district court was never afforded the opportunity to rule on this allegation, Bird urges us to rule on the legality of the crime victim's compensation fund surcharge "for the sake of judicial economy."

Bird has ample cause to be correct in the observation that his adjudication as a habitual criminal has reference to a status rather than describing a separate crime. *Bird I*, 901 P.2d at 1128. By combining that observation with the assumption that the district court intended that Bird pay the *minimum* surcharge allowed by law *per crime*, he arrives at the conclusion that he should have been assessed only $100.00 insofar as he was adjudicated guilty of only two crimes in the instant case. *See* Wyo. Stat. § 1–40–119(a) (Cum.Supp.1996). This conclusion is faulty in the absence of any record support for the proposition that Bird was to pay $50.00 "per crime."

An illegal sentence is one which imposes penalties in excess of statutory limits, imposes multiple terms for the same offense, or otherwise violates a constitution or the law. *Ellett v. State*, 883 P.2d 940, 942 (Wyo.1994). Here, Wyo. Stat. § 1–40–119(a)(i) required the district court to impose a *minimum* crime victim's surcharge of $100.00. The statute placed no limit upon the maximum surcharge which the district court might have required. Therefore, a surcharge of $150.00 upon Bird's convictions for kidnapping and rape is not illegal as being in excess of that amount prescribed by Wyo. Stat. § 1–40–119(a). A record manifesting a crime victim's surcharge of $50.00 *per crime* would render the $150.00 total problematic under the law. Again, however, Bird's complaint fails to find record support.

Whether or not being a habitual criminal is a crime, it is clear that the information or indictment must "charge[ ]" the status by alleging the charged felony and alleging the previous convictions. Wyo. Stat. § 6–10–203(a) (1988). The "Felony Information" filed against Bird in this case alleges the crime of sexual assault in Count I and kidnapping in Count II, saving the allegations concerning his status as a habitual criminal for Count III. At arraignment, the district court noted that "[t]he information is divided into three counts, three separate charges." No objection was lodged.

The district court's oral pronouncement of sentence acknowledged some confusion as to whether a $50.00 crime victim's surcharge should or must be levied on the status of habitual criminal, but assessed a $50.00 surcharge "on each count" rather than each crime. The judgment and sentence entered thereon provided that "the Defendant is assessed a surcharge for the Crime Victim's Compensation Fund in the amount of 50.00 *per charge*, for a total of $150.00." (Emphasis added.) Whether the district court's calculations are characterized as "per charge" or "per count," the record simply does not reflect a sentence which endeavors to exact a $50.00 crime victim's surcharge *per crime*. The surcharge, neither exceeding that authorized by statute nor otherwise contrary to law or constitution, is legal and is affirmed.

## V. CONCLUSION

The district court's denial of Bird's motion to withdraw his guilty pleas is affirmed.