The STATE of Wyoming, Petitioner,

v.

Kathleen Therese McDERMOTT,
Respondent.

No. 97–187.

Supreme Court of Wyoming.

June 11, 1998.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James L. Radda, Deputy Prosecuting, for Teton County.

Katherine L. Mead and David F. DeFazio of Mead & Mead, Jackson, for Respondent.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

This case comes before us upon an order granting a writ of review. We agreed to review the district court's order which reversed the Teton County justice court's denial of a motion to withdraw a guilty plea.

We reverse and remand.

### ISSUES

Petitioner State of Wyoming presents the following statement of the issues:

I. Given that the trial court's findings of facts were neither inconsistent with the evidence, nor clearly erroneous, nor contrary to the great weight of the evidence, did the district court err in substituting its judgment for that of the trial court?

   a. Did the trial court abuse its discretion in not allowing Respondent to withdraw her guilty plea after sentencing?

   b. Could the trial court reasonably have concluded as it did, namely, that Respondent failed to prove "manifest injustice" so as to warrant the withdrawal of her plea?

II. W.R.Cr.P. 43(c)(2) permits pleas and sentencings in misdemeanor cases in the absence of a defendant. Respondent pled guilty by *mail* pursuant to Rule 43(c)(2). Did the district court err, therefore, in reversing the trial court because the trial court did not ask [R]espondent if she was under the influence of alcohol or drugs before accepting her plea?

III. Must a party moving to withdraw a guilty plea after sentencing, under W.R.Cr.P. 32(d), at least assert her innocence in order to establish "manifest injustice["?]

### FACTS

Respondent Kathleen McDermott was arrested on March 16, 1996, for battery and for driving while under the influence of alcohol and prescription drugs. She entered into a plea agreement with the State whereby she agreed to plead guilty to driving while under the influence in exchange for the State recommending that she be given a lenient sentence. The potential penalty for this offense was a jail sentence of not less than seven days nor more than six months and a $750 fine. McDermott signed a document entitled "Defendant's Waiver of Constitutional Rights for Guilty Plea to Misdemeanor" which contained her guilty plea to the driving-while-under-the-influence misdemeanor. The justice court entered a judgment on August 8, 1996, ordering McDermott to serve the minimum sentence, a seven-day prison term, beginning on October 1, 1996. The justice court also fined McDermott $500 but gave her full credit against the fine for the amount that she spent for substance abuse treatment. The justice court amended its order on October 4, 1996, changing the date on which McDermott would begin serving her jail sentence from October 1, 1996, to November 1, 1996.

On October 31, 1996, the justice court suspended execution of the incarceration sentence and scheduled a hearing on McDermott's motion to withdraw her guilty plea. McDermott claimed that, after she had entered her guilty plea, she was diagnosed with having a hyperthyroid condition. She maintained that she was not aware of her condition when she entered her plea and that holding her to her guilty plea would be manifestly unjust because she suffered from emotional and psychological problems which accompanied her hyperthyroidism.

After a hearing, the justice court denied McDermott's motion to withdraw her guilty plea. McDermott appealed to the district court, and the district court reversed the justice court's denial of the motion. The State petitioned this Court for a writ of review, and we granted the State's petition.

## STANDARD OF REVIEW

W.R.Cr.P. 32(d) governs the withdrawal of a guilty plea:

(d) *Plea Withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

The court accepting a guilty plea has discretion in deciding whether to permit a defendant to withdraw her guilty plea. *Jackson v. State,* 902 P.2d 1292, 1293 (Wyo.1995). We will not disturb that court's decision on appeal unless the court abused its discretion. *Id.* The ultimate issue that we decide in determining whether there has been an abuse of discretion is whether or not the court could have reasonably concluded as it did. 902 P.2d at 1293–94.

This Court has articulated the reasons why we require a showing of a manifest injustice when a defendant seeks to withdraw her guilty plea after sentencing has already occurred.

"[W]ithdrawal of a guilty plea *after* sentence is conditioned by Rule 32(d) upon a showing of 'manifest injustice.' This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

*Hicklin v. State,* 535 P.2d 743, 749 (Wyo. 1975) (quoting *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963)).

## DISCUSSION

### A. Abuse of Discretion

The State claims that the justice court did not abuse its discretion in making its findings of fact and denying McDermott's motion to withdraw her guilty plea and that the district court erred by substituting its judgment for that of the justice court. McDermott counters that it would be manifestly unjust to hold her to a guilty plea which she involuntarily entered. She does not claim that she was coerced in any way to plead guilty but contends that her mental problems caused by the hyperthyroidism undermined the voluntariness of her plea.

McDermott presented several witnesses at the hearing who testified about how the hyperthyroidism influenced her decision to plead guilty. Her first witness was Martha Stearn, M.D., a specialist in internal medicine. Dr. Stearn testified that, although the hyperthyroidism might have affected McDermott's judgment in deciding whether or not to plead guilty, McDermott was able to understand what her options were and what the consequences would be for her decision and that McDermott was competent to make an intelligent decision. Michael Enright, Ph.D., a clinical psychologist, testified that the thought of entering a courtroom and facing the charges against her invoked morbid suicidal impulses in McDermott.

McDermott's third witness was Robert Horn, her attorney when she entered her guilty plea. He said that McDermott was distraught on the day she signed the plea agreement but that she possessed the mental capacity to intelligently decide to sign the agreement. He added that a large number of his criminal clients are distraught and under extreme stress when they enter their guilty pleas. He further testified that McDermott undoubtedly understood what she was doing and what the consequences would be when she executed the plea agreement. Horn explained that he had advised McDermott not to enter into the plea agreement but that she did not think she had the emotional strength at that time to withstand the pressure of a criminal trial in the face of her pending divorce and child custody action. Horn believed that, even if McDermott had

known of her hyperthyroid condition, she would have pleaded the same way because the reason why she was pleading guilty would not have changed.

Marilee Enright, M.S.W., a social worker, testified that she and McDermott had discussed the entry of the guilty plea. She said: McDermott "seemed very adamant that since she was guilty and there was no question about the fact that she did this, that the guilty plea would in some way—this is when I thought she wasn't thinking very clearly—would in some way ameliorate her guilt about the situation."

During McDermott's own testimony, she admitted that she had driven a motor vehicle while she was under the influence of alcohol and prescription medications to a degree which rendered her incapable of driving safely. She also testified that she fully understood what she was doing when she entered her guilty plea and that she agreed with the factual basis recited in the "Defendant's Waiver of Constitutional Rights for Guilty Plea to Misdemeanor":

I understand that I have violated this section [Wyo. Stat. § 31-5-233(b)(ii) (1997) ] by (factual basis): on March 16, 1996, I drank wine in my home and got into an argument with Sandra Elizabeth Whitney who was taking care of my children. I took my daughter and left the home. Sandra Elizabeth Whitney called [the] police and they stopped me while I was driving. I was driving a motor vehicle after I had consumed wine and had taken prescription medication. I was under the influence to a degree which rendered me incapable of safely driving.

■ A guilty plea is valid when it is the product of a voluntary and intelligent choice made from the options which are available to the defendant. *Mehring v. State*, 860 P.2d 1101, 1109 (Wyo.1993). A party who seeks to withdraw her plea has the burden of demonstrating a manifest injustice. *Jackson*, 902 P.2d at 1293. The acknowledged standard for testing whether a plea is voluntary states:

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."

*Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)). *See also Rodriguez v. State*, 917 P.2d 172, 175 (Wyo.1996). Although this Court has not defined "manifest injustice," our previous decisions have intimated that it means a situation which is "unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State*, 945 P.2d 775, 777 (Wyo.1997).

McDermott was undoubtedly and understandably under a lot of pressure when she entered her plea, feeling that she did not have the emotional strength to face a criminal trial in light of her pending divorce action and custody dispute. The "Defendant's Waiver of Constitutional Rights for Guilty Plea to Misdemeanor," nevertheless, reflects that McDermott entered her plea freely and voluntarily without threats or promises being made to her. It is evident from that document that McDermott was informed as to what the direct consequences of her plea would be and that she expressly acknowledged she was aware of these consequences. McDermott's testimony, as well as that of her own witnesses, supported the justice court's findings that McDermott was mentally able to voluntarily, freely, and intelligently enter a guilty plea and that she was fully aware of her options and the consequences when she pleaded guilty. Under these circumstances, McDermott's decision to take the minimum jail sentence of seven days was an intelligent and voluntary choice given the options which were available to her.

■ The justice court addressed McDermott at the hearing, stating:

But I think you understood your choices. I think you understood—you told me you

understood your choices. You told me you understood your options, your right and all of that, and you just couldn't face one more thing and you felt it would put you over the edge if there were one more thing you had to fill, and that was hard to face. And I think that you were very honest and I believe you on that. But I think you understood your options. You understood all the things you had to face. You made an intelligent and voluntary choice at that time. That given all these things I have to face, this is what I want to do. I want to take the plea agreement.

The justice court's only obligation was to make sure that McDermott was free of intimidation, coercion, and deception when she made her decision; it was not obligated to ensure that she made a wise decision. *Rude v. State*, 851 P.2d 20, 26 (Wyo.1993). Although many defendants are sensitive to external pressures, sensitivity to outside pressures does not render a plea involuntary if the plea was the product of free will. *Id.* If defendants were allowed to withdraw their pleas because they possessed mental reservations, few pleas could be accepted with confidence. *Id.*

We conclude that the justice court's decisions that McDermott voluntarily entered her guilty plea and that she did not demonstrate that it would be manifestly unjust to deny her request to withdraw her guilty plea were reasonable. The district court, therefore, erred by substituting its judgment for that of the justice court.

## B. W.R.Cr.P. 43(c)(2)

■ One of the reasons the district court gave for reversing the justice court was that the justice court did not ask McDermott whether she was under the influence of alcohol or drugs before it accepted her plea. The State contends that such an inquiry was neither possible nor required because McDermott pleaded guilty in writing under W.R.Cr.P. 43(c)(2).

■ Defendants are allowed to enter their pleas by mail in certain circumstances: .

(c) Presence Not Required. A defendant need not be present in the following situations:

. . .

(2) In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial, and imposition of sentence in the defendant's absence[.]

W.R.Cr.P. 43(c)(2). W.R.Cr.P. 11(b) specifically excludes pleas which are entered under W.R.Cr.P. 43(c)(2) in the formal-advice-to-defendant requirements for accepting guilty pleas. We do, however, require the court accepting the plea to scrutinize the plea to ensure that the defendant is voluntarily entering the plea. *State v. Rosachi*, 549 P.2d 318, 321 (Wyo.1976). A court must, therefore, read W.R.Cr.P. 11(b) in conjunction with W.R.Cr.P. 43(c)(2) and adapt the W.R.Cr.P. 11(b) procedure to the situation of a written plea so that, to the extent possible, defendants entering their guilty pleas in writing will be afforded the fundamental protections outlined in W.R.Cr.P. 11(b).

After examining the plea agreement, we conclude that it substantively complied with W.R.Cr.P. 11(b) to the extent that it was possible for a W.R.Cr.P. 43(c)(2) plea by mail to comply. We, therefore, hold that the justice court's determination that McDermott had been given the appropriate W.R.Cr.P. 11(b) advice was reasonable. The district court erred by reversing the justice court's decision on the basis that the justice court did not ask McDermott whether she was under the influence of alcohol or drugs before it accepted her plea, especially when W.R.Cr.P. 11(b) does not require that this inquiry be made.

The district court erred by substituting its judgment for that of the justice court. We, therefore, reverse and remand this case to the district court and instruct it to affirm the justice court's denial of McDermott's motion to withdraw her guilty plea. Our holdings on the State's first two issues are dispositive of

the third issue. We, therefore, will not address the third issue at this time.

Reversed and remanded.