2001 WY 114

Luke Ray STOUT, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 00–314.

Supreme Court of Wyoming.

Dec. 3, 2001.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellant Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Luke Ray Stout (Appellant) appeals the denial of his motions to withdraw his guilty plea filed prior to sentencing and his request for new counsel. Appellant also claims that his counsel did not adequately represent him at sentencing. We affirm.

[¶ 2] Appellant raises two issues on appeal:

*Issue I*

> Whether the district court abused its discretion in failing to fully explore Appellant's request for substitute counsel; in the alternative, the district court abused its discretion in not rejecting, on its own motion, Appellant's guilty plea, or failing to grant Appellant's motion for withdrawal of guilty plea, as Appellant was not adequately advised by appointed counsel?

*Issue II*

> Whether Appellant was adequately represented at his sentencing, in violation of his sixth amendment right to counsel?

The State framed the issues on appeal in slightly different language:

I. Did the district court properly deny Appellant's motions for substitution of counsel and withdrawal of his guilty plea?

II. Did Appellant receive adequate and effective representation at his sentencing hearing?

## FACTUAL BACKGROUND

[¶ 3] On March 9, 2000, Appellant slit Justin Bloxom's throat. Fortunately, Bloxom survived. Appellant was arrested and charged with attempted first-degree murder. On August 16, 2000, Appellant entered into a plea agreement with the State. Appellant agreed to plead guilty to attempted voluntary manslaughter and, in exchange, the State agreed to recommend a sentence of 10 to 18 years in the penitentiary. A change of plea hearing was held at which Appellant was informed that by pleading guilty he would be waiving certain rights, including the right to a jury trial. Appellant acknowledged that he understood the consequences of his plea and expressed his desire to proceed with the plea agreement:

[*Court*]: At that time [arraignment] I gave you a number of advisements concerning the rights that you had in connection with the charge. I also talked to you about the consequences of entering a guilty plea. And I believe that I explained to you that if you entered a guilty plea you give up some of the rights that we talked about, including the right to go to trial, the right to confront State witnesses, the right to present witnesses in your defense, the right to object to technical defects in the proceedings, if any.

And, of course, most importantly, if a person pleads guilty, they subject themselves to possible imposition of all the penalties and consequences that, you know, are a part of the charge that's filed.

Do you have any questions about any of that?

[*Appellant*]: No, sir.

. . . .

[*Court*]: So what do you think you want to do, [Appellant], do you think you want to change your plea to the amended charge in hopes the Court will approve the plea agreement we've talked about or not?

[*Appellant*]: Yes, sir.

After establishing a factual basis for the plea, the district court accepted Appellant's guilty plea to attempted voluntary manslaughter.

[¶ 4] On August 28, 2000, Appellant sent a letter to the district court judge expressing dissatisfaction with his counsel and requesting appointment of "an attorney with experience." Appellant also requested a meeting with the judge because he had questions. On September 7, 2000, the district court held a hearing on Appellant's letter. At the hearing, the district court announced that it was treating Appellant's letter as a motion to substitute counsel and as a motion for a withdrawal of his guilty plea. Appellant cited three reasons for his request: (1) his counsel allegedly had informed him that he could go to trial even after changing his plea to guilty; (2) counsel allegedly told him that if he did choose to go to trial after changing his plea, he would not be able to obtain a different counsel and would have to proceed on his own; and, (3) counsel had supposedly told Appellant's grandmother that he was certain of Appellant's guilt. During the course of the hearing the following colloquy took place:

[*Appellant*]: The main reason for this [the request for new counsel] was [defense counsel's] comment after the last hearing, Your Honor.

[*Court*]: So your grandmother, to walk out and say, "We know he did it," that is—

[*Appellant*]:—I don't believe acting professional. That wasn't—wasn't something that your attorney, somebody that's supposed to be representing you, walks out and says to your family. That was—it was—I believe it was very wrong and that

[*Court*]: So that's what you're relying upon?

[*Appellant*]: Well, no. I'm not relying on anything, anymore. I don't know all the fancy talk and

[*Court*]: But that's—you're thinking that that was some sort of an error in the case? After you had already pled guilty, some comment made by your lawyer you think somehow justifies you changing your plea?

[*Appellant*]: No. I think the error was in his lack of—his lack of counsel when I told him I wanted to change my plea, that I didn't want to take the plea, which was before the hearing. I told him I didn't want to take the plea, that I wanted to go to trial. He did not—he did not—he did not tell me that something like this may happen.

[*Court*]: Something like what?

[*Appellant*]: Like if I were to take the plea that I didn't have the opportunity for—to go back to trial. When he offered the plea to me, that was part of

[*Court*]: Wait a minute. I told you that if you pled guilty you would give up your right to trial. I personally told you that before you changed your plea. So I don't know what you're talking about off the record, but on the record I told you that.

[*Appellant*]: Right. And I guess off the record I might have misunderstood what he said, but I believe he told me that even if I changed my plea to guilty that I would still have the option of going—of taking that back and going to trial. Obviously, I misunderstood. And that's another problem. I need to know what's going on. I haven't—I haven't actually known what's happened since the beginning.

[*Defense Counsel*]: Your Honor, with regard to [Appellant's] motion to withdraw his plea, I certainly don't want to stand in the way of his ability to seek the Court's permission to do that. I did not necessarily interpret his letter as a motion here for that, although I can see that obviously is his intent.

[*Appellant*]: No, it is not my intent. My intent was a continuance so that maybe I can get representation, representation that I would be satisfied with; and then based on what—the reason I was asking for this was to get the representation so that somebody might start telling me what's going on.

[*Defense Counsel*]: And I would suggest that if [Appellant's] reasons for seeking to withdraw his plea are having to do with my professional conduct, it puts me in a potential conflict of interest in helping him establish the basis to withdraw his plea; and I would suggest that it would be most appropriate that another attorney aid him in pursuing that goal if that is his goal. And perhaps a decision on that matter should be continued until he's had a chance to consult with counsel.

[*Prosecutor*]: Your Honor, it seems to me that what [Appellant] is looking for, according to what he said, is an attorney that he's satisfied with. I don't know [Appellant], and I don't know if such an attorney exists on the face of the earth. [Appellant] finds himself in a tough predicament here.

It seems to me that any decision—if what [Appellant] is trying to do is finished [*sic* ] private counsel to represent him, we've got—we've got a sentencing date now, depending on what happens with any motion to withdraw his plea, if that's granted; then we'll have a trial date.

The clock has been running. He apparently has known about this since he sent this letter out August 28th. He's had or his family has had time to try to find counsel for him. I think maybe we're better off waiting to cross those bridges until we come to it. Let's see if he ever finds an attorney that he's satisfied with before we make a decision to grant either a motion—well, grant his motion at least for substitute counsel at this time, because on the basis of it, from what I've heard, he has yet to produce any evidence that would indicate that [defense counsel] has either been incompetent, has a conflict of interest or is otherwise incapable of providing effective assistance of counsel.

[*Appellant*]: Your Honor, [the prosecutor] is right. I wrote that letter asking for a continuance so that my family might possibly find an attorney that would represent me, not anybody else's interests, not—not what anybody else thinks. Wouldn't represent his own opinions; he

would represent me. But—it sounds like a waste of my breath.

[*Court*]: Well, counsel, from the perspective of the criminal justice system, if a defendant is carefully advised of his rights, it would be bad policy to automatically allow last-minute changes in counsel; and, obviously, we have a lot of case law regarding requests to change pleas.

Examining the record in this case in particular, and also trying to construe [Appellant's] comments here this morning favorably for him, the Court still does not see any kind of reasonable or lawful basis that it could conclude that he has not been represented adequately throughout these proceedings, nor does the Court find anything in the record that would indicate a reason to change the plea that he entered back on August 16, 2000.

So the Court is going to treat this letter that we've been talking about as a request for change of counsel and a request for change of plea and it is going to deny both motions.

Also, it is going to deny any request for continuance at this time and order that the matter will be heard for sentencing October 9, 3:30 p.m. so long as the Presentence Investigation Report is available for the [Appellant] at least ten days prior to that date.

[Appellant], if you want to consult with [defense counsel], you certainly may. I'm not kicking him off the case. He's available if you want to talk to him. If you want to talk to any other lawyer, feel free to do that. If you want some other lawyer to be present for you at your expense at the sentencing hearing, that's fine. I have no problem with allowing them to participate. Just be sure if you talk to someone that they file a written entry of appearance in this case so that we can send them copies of any documents that might be filed.

Appellant attempted to obtain counsel at his expense but the effort foundered when a private attorney declined to represent him after reviewing the case.

[¶ 5] Sentencing on Appellant's guilty plea took place on October 9, 2000. Initially, the district court inquired of Appellant if he had any objections or corrections to make to the Presentence Investigation Report. Appellant replied that he had read the report and had not seen any inaccuracies in it.

[¶ 6] Next, the district court addressed Appellant's counsel. Prior to the hearing, Appellant's counsel had filed a motion to withdraw because Appellant refused to see or speak with him. Appellant's counsel raised the issue with the district court at the outset of the sentencing hearing:

Your Honor, [Appellant] has informed me, as he just did the Court, that he doesn't disagree with anything in the PSI.

I do want to bring to the Court's attention that I earlier filed a motion to withdraw as counsel for [Appellant], because he was refusing to talk to me, wouldn't see me in the jail; and I have not been able to prepare him for this hearing.

[Appellant] did consent to speak to me just prior to the hearing today and expressed his desire to go ahead with the sentencing; however, because he hasn't been willing to communicate with me, I have not been able to properly prepare for this hearing on his behalf. And that was the reason for my motion to withdraw.

The district court indicated that after reviewing the PSI and the facts surrounding the crime, it was ready to approve the plea agreement recommendation on the sentence. The court then asked Appellant if he wanted to say anything before sentence was announced. Appellant declined the opportunity. The district court then sentenced Appellant pursuant to the plea recommendation to a term of not less than 10 years nor more than 18 years, along with restitution.

## STANDARD OF REVIEW

[¶ 7] Our review of Appellant's contentions on appeal necessitates the application of several different standards. A refusal to appoint substitute counsel is reviewed under an abuse of discretion standard:

While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an

abuse of discretion is shown. A factual showing of good cause for the appointment of substitute counsel is essential to the demonstration of an abuse of discretion, and good cause is to be found in incompetence, commitment to a position or an interest which would conflict with the furnishing of an effective defense to the accused, or other good reason to conclude that appointed counsel is unable to furnish effective assistance.

*Bell v. State,* 994 P.2d 947, 951 (Wyo.2000) (quoting *Irvin v.. State,* 584 P.2d 1068, 1071 (Wyo.1978)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Oldman v. State,* 998 P.2d 957, 960 (Wyo.2000) (quoting *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)).

[¶ 8] The district court's discretion is also at issue in determining whether Appellant should have been allowed to withdraw his guilty plea:

A defendant does not enjoy an absolute right to withdraw a plea of guilty prior to the imposition of sentence. *Osborn v. State,* 672 P.2d 777, 788 (Wyo.1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); *Ecker v. State,* 545 P.2d 641, 642 (Wyo.1976). The trial court is vested with discretion to determine whether to grant a motion to withdraw a plea of guilty made prior to sentencing, and it does not abuse that discretion by denying the withdrawal of the plea so long as the requirements of W.R.Cr.P. 11 were complied with at the time the plea was accepted. *Kaldwell v. State,* 908 P.2d 987, 990 (Wyo.1995). Even when the defendant provides a plausible or just and fair reason for withdrawal of the plea of guilty, the denial of the defendant's motion does not amount to an abuse of discretion if the trial court conducted a careful hearing pursuant to W.R.Cr.P. 11 at which the defendant entered a plea or pleas of guilty that was knowing, voluntary, and intelligent. *Osborn,* 672 P.2d at 778–79.

*Nixon v. State,* 4 P.3d 864, 868–69 (Wyo. 2000).

[¶ 9] Appellant also alleges that his Sixth Amendment right to be represented by counsel at sentencing was violated. This claim implicates a constitutional right, and as such, requires a *de novo* assessment on appeal. *Sidwell v. State,* 964 P.2d 416, 418 (Wyo.1998) (citing *United States v. McCarty,* 82 F.3d 943, 949 (10th Cir.1996), *cert. denied,* 519 U.S. 903, 117 S.Ct. 257, 136 L.E.2d 183 (1996)).

## DISCUSSION

*Substitute Counsel*

[¶ 10] Appellant raises two challenges to the district court's denial of his request for substitute counsel. First, he argues that the district court failed to "adequately and fully explore, through a formal inquiry, [Appellant's] reasons for [requesting] substitute counsel." Essentially, Appellant complains that the district court listened to him and made a decision based on its observations of his counsel's performance, which fell below the court's duty to formally explore his concerns about his counsel and his reasons for desiring substitute counsel. Second, Appellant contends that the district court abused its discretion by not granting his request for substitute counsel because he had adequately demonstrated a lack of communication, incorrect legal advice, and a lack of faith in his counsel's performance.

[¶ 11] We are at a loss to comprehend Appellant's contention that the district court failed to fully and completely explore his request for substitute counsel. The court held a formal procedure—a hearing—wherein Appellant was allowed to present the reasons behind his request. The record clearly shows that the district court gave Appellant the benefit of the doubt and treated his letter as a motion for substitute counsel. The hearing on that motion was conducted with Appellant and his counsel present. Appellant was given every opportunity to present his case. The district court listened to him and asked questions of him and of his counsel. The portion of that hearing quoted above in our discussion of the factual and

procedural history of this case clearly belies Appellant's claim that the district court did not afford him a full and adequate opportunity to explain his position. Furthermore, Appellant's brief fails to suggest exactly where the district court failed in making an inquiry into his request for substitute counsel. Nor does it suggest what alternative procedure would have been appropriate. In short, Appellant has completely failed to meet his burden of demonstrating that the district court's consideration of his request was procedurally deficient in any way.

[¶ 12] After reviewing the transcript of the hearing in conjunction with the record, we are unable to find any reason constituting good cause that would support an order substituting counsel. At the hearing, Appellant pointed to three factors influencing his decision to request substitute counsel: (1) allegedly incorrect legal advice; (2) a purported comment by counsel to his grandmother on the certainty of Appellant's guilt; and, (3) a perceived lack of experience. The district court noted that it did not see any reasonable or lawful basis from which it could be concluded that Appellant was not provided with adequate representation.[1] The district court properly focused on whether Appellant had received effective legal representation:

> The United State Supreme Court has ruled that the Sixth Amendment does not guarantee a meaningful relationship with appointed defense counsel. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

> [T]he purpose of providing assistance of counsel "is simply to ensure that criminal defendants receive a fair trial," *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that in evaluating Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *United States v. Cronic*, 466 U.S. 648, 657, n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

> *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

*Bell*, 994 P.2d at 951–52. "The test is whether you have an effective, legal counsel representing you." *Id.*

[¶ 13] The record supports the district court's conclusion. For example, prior to Appellant's plea agreement, his counsel made the following filings with the district court: a demand for discovery; a motion for prior notice of the State's intent to introduce evidence under W.R.E. 404, 608, and 609; a notice of intent to introduce expert testimony concerning Appellant's mental condition based upon his use of alcohol on the night of the incident in light of his history of alcohol abuse and alcohol-induced blackouts; a motion opposing the State's use of photographic evidence of the victim's injuries because of their inflammatory and prejudicial potential; a memorandum in support of a defense expert's testimony regarding Appellant's extreme intoxication that caused amnesic blackouts; and a motion opposing the introduction of evidence that Appellant had purchased alcohol for minors. These filings, along with defense counsel's arguments during motion hearings, support the district court's finding that Appellant was provided effective representation on his behalf. Indeed, Appellant's defense counsel was ultimately able to secure a plea agreement. This is significant in light of the fact that Appellant was charged with attempted first-degree murder, which carries a potential sentence of life imprisonment. Under these circumstances, we conclude that the district court did not abuse its discretion when it denied Appellant's request to substitute counsel.[2]

---

1. The allegation that defense counsel had allegedly provided erroneous legal advice regarding the effect of Appellant's guilty plea on his right to a jury trial would certainly, if true, be evidence of ineffective representation. However, as the district court noted, Appellant's claim is dubious in light of the fact that Appellant was informed of the consequences of his guilty plea at the change of plea hearing. The district court clearly explained the consequences to Appellant who acknowledged that he understood those consequences prior to entering his guilty plea.

2. It should be noted that although the district court denied Appellant's request to assign a new public defender, the court did give Appellant the option of retaining private counsel.

*Withdrawal of Guilty Plea*

[¶ 14] In addition to a request for substitute counsel, the district court treated Appellant's letter as a motion to withdraw his guilty plea. During the hearing on his letter, Appellant expressly stated that it was not his intent to withdraw his plea. Nevertheless, the district court addressed the issue as if it had been raised and concluded that Appellant had failed to meet his burden under W.R.Cr.P. 32(d) for withdrawing a guilty plea. On appeal, Appellant contends that the hearing on his letter conclusively demonstrated that his plea, when originally made, was not knowingly, voluntarily, or intelligently given. Accordingly, Appellant argues that the district court abused its discretion in accepting his guilty plea in the first instance or, in the alternative, denying his motion to withdraw his plea.

[¶ 15] The district court does not abuse its discretion by denying a motion made prior to sentencing to withdraw a guilty plea if the requirements of W.R.Cr.P. 11 are complied with at the time the plea is accepted.[3] *Nixon,* 4 P.3d at 868. We will not disturb the district court's decision so long as it could have reasonably concluded as it did. *Nixon,* 4 P.3d at 869. Like the district court, we will give Appellant the benefit of the doubt and address his letter as if it had been a motion to withdraw his guilty plea despite his explicit statement before the court that he had no intention of making such a motion.

[¶ 16] "A condition precedent to our acceptance of the proposition that an accused has effectively changed his plea from not guilty to guilty, and thus made up an issue upon which judgment could be entered and sentence pronounced, is a showing on the record that [W.R.Cr.P. 11] has been complied with." *Hoggatt v. State,* 606 P.2d 718, 724 (Wyo.1980). Pursuant to Rule 11, before a district court can accept a guilty plea, it must inform a defendant on the record in open court and in the presence of counsel of the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, *etc.*) and, in controlled substance offenses, the potential loss of entitlement to federal benefits. . . .

. . . .

(2) The defendant has the right to be represented by an attorney at every stage of the proceedings and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse wit-

---

**3.** We recently expanded on the factors a district court should consider when deciding whether to allow the withdrawal of a guilty plea:

A defendant has no absolute right to withdraw a plea of guilty before sentence is imposed, and where the strictures of W.R.Cr.P. 11 have been met, and the defendant intelligently, knowingly, and voluntarily entered into his plea of guilty, the district court's decision to deny such a motion is within its sound discretion. *Burdine v. State,* 974 P.2d 927, 929–30 (Wyo. 1999); 3 Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d* § 538 (1982 and Supp.2001). Seven factors have been suggested as pertinent to the exercise of the court's discretion: (1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. 3 Wright, *Federal Practice and Procedure: Criminal 2d* § 538 (Supp.2001); *United States v. Black,* 201 F.3d 1296, 1299– 1300 (10th Cir.2000).

*Frame v. State,* 2001 WY 72, ¶ 7, 29 P.3d 86 ¶ 7 (Wyo.2001). Our decision in *Frame* was issued after the district court's order in this case. Accordingly, we review the district court's order in the context of our precedent that existed at that time. The resolution we reach in this case would not be markedly different if we examined it under *Frame.*

nesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

W.R.Cr.P. 11(b)(1)-(5).

 [¶ 17] As noted above, our focus is on the proceedings at the time Appellant's plea was accepted. A review of the colloquy between Appellant and the district court discloses that the requirements of Rule 11 were satisfied during the change of plea proceedings. The court clearly explained the consequences of a guilty plea and the rights Appellant would be waiving if he acquiesced in the plea. Appellant acknowledged that he understood the nature of the proceedings and the consequences of a guilty plea. Appellant fails to point to any specific part of the change of plea proceedings indicative of non-compliance with the requirements of Rule 11. Accordingly, we conclude that the district court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea.

*Sentencing*

 [¶ 18] Appellant claims that he was effectively denied representation at sentencing because communications with his court-appointed counsel had irretrievably broken down. The result, Appellant claims, was to leave him without any legal advice and thus unprepared for sentencing. Appellant argues that this effectively left him to proceed *pro se* at sentencing without proper warnings established in this Court's opinion in *Trujillo v. State,* 2 P.3d 567, 573–75 (Wyo.2000). Ac-

cordingly, Appellant contends this case should be remanded for re-sentencing.

[¶ 19] In *Trujillo,* the defendant repeatedly interfered with his court-appointed counsel's ability to represent him. Trujillo ultimately went through four attorneys. Understandably frustrated, the district court elected to proceed with sentencing without appointing a fifth attorney. Thus, Trujillo was sentenced without any legal representation. We concluded that a defendant's actions could be so dilatory and obstructive that he could be deemed to have waived his right to legal representation. However, in order for that waiver to be knowing and voluntary, we required the trial court to warn the defendant that his continued misbehavior would result in a wavier of that right. *Trujillo,* 2 P.3d at 572–75.

[¶ 20] Our decision in *Trujillo* is not applicable to Appellant's situation. *Trujillo* concerns the procedure a trial court must follow when a defendant's dilatory and obstructionist behavior make it impossible for him to have legal representation. Trujillo did not have any counsel representing him at his sentencing. In this case, Appellant was represented at sentencing by counsel, who appeared on his behalf and participated in the hearing. Appellant's contention that he was "effectively" deprived of representation because of his refusal to speak with his counsel prior to the sentencing hearing does not alter the fact that he was represented by counsel. If one accepts Appellant's position, then his complaint is more properly characterized as an ineffective assistance of counsel claim. However, Appellant does not make any argument on that basis, and we will not make it for him.

[¶ 21] Furthermore, Appellant makes a broad claim that he was unprepared for the sentencing hearing. However, he utterly fails to articulate how he was unprepared. The record discloses that Appellant had reviewed the PSI prior to the hearing and had no objections to it. Appellant also declined the opportunity to speak to the court prior to sentencing. Appellant does not suggest what additional preparation he would have undertaken. He makes no argument that his sentence, which was pursuant to the terms of

the plea agreement, would have been any different. In short, Appellant makes no allegation of prejudice or harm. Therefore, we find no error in Appellant's sentencing.

## CONCLUSION

[¶ 22] The district court did not abuse its discretion in denying Appellant's motions to withdraw his guilty plea and substitute new counsel. Appellant was adequately represented by counsel at sentencing, and, therefore, we affirm the district court's judgment and sentence in its entirety.

[¶ 23] Affirmed.